UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SONIA POINCON                                        CIVIL ACTION

VERSUS                                               NO. 18-10251

OFFSHORE MARINE                                      SECTION: M (3)
CONTRACTORS, INC.

### ORDER & REASONS

Before the Court is a motion by third-party defendant REC Marine Logistics, LLC ("REC") for summary judgment on the third-party claim against it.[1] Third-party plaintiff Offshore Marine Contractors, Inc. ("OMC") responds in opposition,[2] and REC replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants REC's motion, holding that OMC cannot seek indemnity or contribution from REC for maintenance and cure payments made to its employee, plaintiff Sonia Poincon, following a 2018 accident, in which REC was not involved and as to which OMC is alleged to be at fault, on the alleged ground that such payments were due in part to the aggravation of an injury Poincon sustained in a 2015 accident, as to which REC but not OMC is alleged to be at fault.

**I.    BACKGROUND**

This suit involves maritime personal injury claims brought by a Jones Act seafarer and cook. Poincon originally filed a single suit in this Court (Civil Action No. 18-2748) against REC and OMC for personal injury damages allegedly arising out of two separate and distinct incidents.[4]

---

[1] R. Doc. 32.
[2] R. Doc. 33.
[3] R. Doc. 40.
[4] Civil Action No. 18-2748, R. Doc. 1.

According to Poincon's complaint in this case, the first incident occurred in May 2015, while Poincon was employed by defendant OMC on the *M/V Louis J. Eymard*, a vessel owned by United Community Bank ("UCB").[5] Poincon alleges that she sustained injuries to her neck and back when a tug and barge owned and operated by REC collided with the *Louis J. Eymard*.[6] Poincon visited the medical provider Occupational Health Services once after the incident, and no other maintenance and cure was paid in conjunction with the 2015 accident.[7] Poincon's claims for this 2015 incident were directed against REC, OMC, and UCB.[8]

Poincon alleges that the second incident occurred in February 2018, nearly three years later, while Poincon was employed by OMC on the *M/V Toby Dodd*, a vessel OMC owned.[9] Poincon alleges further that she injured her neck and back when attempting to break through ice that had accumulated in the vessel's freezer.[10] Poincon's claims for this second incident are directed against only OMC.[11]

UCB filed a motion to sever, which this Court granted reasoning:

> Here, the two incidents did not arise from the same transaction or occurrence or series of transactions or occurrences. Rather, each incident involved different parties (except for OMC) and occurred in different places and at different times. The first incident occurred in May of 2015, with the alleged injuries to Poincon resulting when a tug and tow collided with the vessel on which she was working. The second incident occurred in February of 2018, almost three years after the first incident, with the alleged injuries to Poincon resulting from work removing ice from the freezer of an entirely different vessel on which she was then working. The only commonalities were Poincon's employment by OMC and the alleged injuries to her neck and back in both instances. But these limited facts, though shared, are not enough to overcome the reality that there exist no common questions of fact concerning the liability of the distinct sets of defendants involved in the two incidents. Instead, separate evidence must be presented with respect to each incident. After all, the incidents themselves are completely different, one

---

[5] R. Doc. 1 at 2.
[6] *Id.* at 3.
[7] R. Doc. 32-1 at 5.
[8] R. Doc. 1 at 2-3.
[9] *Id.* at 3.
[10] *Id.*
[11] *Id.*

involving a vessel collision or allision, and the other a slip and fall. In light of this overarching difference in the essential character of the incidents, the liability of the defendants involved in each incident would have to be considered separately, as a practical matter, even if the claims were tried together. The difficulty of doing so should be avoided.[12]

After severance, the captioned case was opened for Poincon's claims arising out of the 2018 incident with OMC as the sole defendant.[13] OMC then filed a third-party complaint against REC seeking indemnity and contribution for the maintenance and cure it paid to Poincon to the extent such payments resulted from the 2015 incident.[14] OMC alleges that Poincon's maintenance and cure claim arose in whole or in part out of the 2015 accident, and that REC was at fault for the 2015 accident, entitling OMC to indemnity and contribution from REC for those payments.[15] OMC also alleges that in 2015, its vessel, the *Louis J. Eymard*, on which Poincon was employed, was stationary when it was hit by REC's vessel.[16] OMC alleges further that Poincon claims she sustained injuries to her neck and back as a result of the 2015 allision, and that, when she fell in the freezer on the *Toby Dodd* in 2018, she sustained "additional aggravating disability injuries" to her neck and back.[17] OMC reasons, then, that the maintenance and cure it paid to Poincon after the 2018 accident arose in whole or in part because of the injuries she sustained in the 2015 allision, for which REC was at fault.[18] Thus, OMC alleges that REC's negligence in 2015 caused the need for all or part of Poincon's maintenance and cure in 2018.[19]

---

[12] Civil Action No. 18-2748, R. Doc. 43 at 6 (emphasis and footnote omitted).
[13] *Id.* at 9. In 2019, the parties settled Poincon's claims arising out of the 2015 incident, and Civil Action No. 18-2748 is now closed.
[14] R. Doc. 9.
[15] *Id.* at 2.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 2-3. Poincon dismissed her claims against OMC and UCB arising out of the 2015 incident. Civil Action No. 18-2748, R. Docs. 67 through 70.
[19] R. Doc. 9 at 3.

## II.     PENDING MOTION

REC argues that OMC's third-party claim against it should be dismissed because Poincon's 2018 accident, from which the maintenance and cure payments emanated and in which REC had no involvement, is a superseding and independent cause for such payments, separate and distinct from the 2015 accident.[20] REC argues that its negligence did not cause or contribute to the need for maintenance and cure, which it contends arose from the 2018 accident, and thus, it does not owe OMC indemnity or contribution.[21] REC points out that the accidents are separated by three years, Poincon continued to work after the 2015 accident with almost no medical treatment, and there is no evidence that the 2018 slip and fall was caused by, or a foreseeable result of, the 2015 incident.[22] In sum, REC argues that there was no need for maintenance and cure until after the 2018 accident, and that OMC's liability for those payments arose out of its general maritime law duty as Poincon's employer.[23]

In opposition, OMC argues that Poincon testified in deposition that her neck pain began after the 2015 accident, for which OMC says REC was at fault, and thus, REC owes OMC indemnity and contribution for the related maintenance and cure it paid to Poincon after the 2018 accident.[24] OMC further argues that the factfinder should determine what maintenance and cure, including Poincon's neck surgery, was necessitated by the 2015 accident, and thus whether REC is liable to OMC for indemnity and contribution of all or part of the maintenance and cure payments.[25]

---

[20] R. Doc. 32-1.
[21] *Id.* at 6-12.
[22] *Id.* at 9-10.
[23] *Id.* at 10.
[24] R. Doc. 33 at 3.
[25] *Id.* at 8-9.

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper*

*v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Maintenance and Cure**

"If a seaman 'becomes ill or suffers an injury while in the service of a vessel,' regardless of which party is to blame, his Jones Act employer owes him 'an absolute, non-delegable duty' to pay" maintenance (a daily allowance for food and lodging) and cure (medical expenses). *In re 4-*

*K Marine, L.L.C.*, 914 F.3d 934, 937 (5th Cir. 2019) (quoting *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1011-13 (5th Cir. 1994)). The shipowner's obligation to pay maintenance and cure to an injured seaman arises out of the employment relationship between the vessel and the seaman. *See Adams v. Texaco, Inc.*, 640 F.2d 618, 620 (5th Cir. 1981). Because it is not based on fault, the employer must pay maintenance and cure even if the seaman is solely or contributorily negligent in causing his own damages, and regardless of whether the injury or illness arises out of his employment. *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722, 724 (5th Cir. 1980) (citations omitted); *see also Bertram*, 35 F.3d at 1013 (a vessel owner "is almost automatically liable for maintenance and cure" because a seaman's right to it "is implied in the employment contract," is not "predicated on the fault or negligence of the shipowner," and "is independent of any other source of recovery for the seaman") (quoting *Brister v. A.W.I., Inc.*, 946 F.2d 350, 360 (5th Cir. 1991); alteration omitted).

Citing these principles, the Fifth Circuit in *Savoie* held that common sense dictates that "a [third] party whose neglect has caused or contributed to the need for maintenance and cure payments should reimburse the cost of those payments, which would otherwise be borne by a *non-negligent or passively negligent employer*." 627 F.2d at 723-24 (emphasis added). The next year, the Fifth Circuit in *Adams* explained that the rationale of *Savoie* "equally supports the conclusion that a concurrently negligent [third-party] tortfeasor should proportionately contribute to maintenance and cure paid by a *negligent shipowner* [employer] when the latter's negligence only concurrently contributed to the seamen's injury." 640 F.2d at 621 (emphasis added). Said differently, "a party whose neglect has in part contributed to the need for maintenance and cure payments … should reimburse the costs of those payments to the extent occasioned by its fault." *Id.* Thus, in the Fifth Circuit, a third-party tortfeasor must reimburse a seaman's employer "only

7

where its negligence 'caused or contributed to the *need* for maintenance and cure.'" *4-K Marine*, 914 F.3d at 938 (quoting *Bertram*, 35 F.3d at 1014; emphasis in original).[26]

This case involves two distinct accidents separated by three years. First, there was an allision in 2015 for which REC may bear fault, and in which Poincon claims she sustained injuries to her back and neck. After the allision, Poincon was treated on the day of the incident and released to return to full duty that day. OMC, Poincon's employer, paid no maintenance and cure.

In the second incident, in 2018, Poincon slipped and fell in a freezer aboard OMC's vessel. Poincon alleges that the negligence of OMC (and no one else) caused this accident. Poincon alleges that her neck and back injuries were aggravated to the point that she could not continue working and required medical attention, including surgery. OMC, as Poincon's employer, paid maintenance and cure after the 2018 slip and fall. REC had no involvement whatsoever in this incident. Nevertheless, OMC claims that it should be able to recover from REC the maintenance and cure it paid to Poincon after the 2018 accident because Poincon's neck and back injuries, OMC says, originated with the 2015 allision.

The question presented here is whether REC's alleged negligence in 2015 can be said to have caused or contributed to the need for OMC to pay Poincon maintenance and cure after the

---

[26] The holdings of *Adams* and *Savoie* yield different results for an employer's ultimate responsibility for maintenance and cure with respect to third parties, depending upon whether the employer was wholly or partly at fault (*Adams*) or without fault (*Savoie*). The Fifth Circuit expressed the policy choice underlying this difference as follows:

> Read together, *Adams* and *Savoie* seem to advance a policy choice as to which party bears the burden of a seaman's negligence when an employer seeks recovery over for maintenance and cure. When the employer is partially at fault, the seaman's negligence is imputed to the employer. This is consistent with the very basis for the maintenance and cure obligation – the employment relationship. Between a negligent employer and a negligent third-party, the seaman's portion of fault is imputed to the employer. But, when the employer is fault-free, it may recover all of the maintenance and cure from the negligent third-party(ies), even though the third-party shares fault with a negligent seaman.

*Bertram*, 35 F.3d at 1020-21. Of course, as to its employee, the employer is completely responsible for any maintenance and cure that is due.

2018 slip and fall. Given the holdings in *Savoie* and *Adams*, this Court believes the answer must be no.

REC's actions in 2015 are too far removed from the 2018 incident to fairly say that OMC's payment of maintenance and cure to Poincon after the 2018 slip and fall was a foreseeable consequence of REC's alleged negligence in causing the 2015 allision. *See Bertram*, 35 F.3d 1014-15 (explaining that imposing liability for maintenance and cure on a third-party tortfeasor is a foreseeable consequence of its negligence for causing an accident giving rise to the employer's legal obligation to pay maintenance and cure to its employee). Indeed, other than one doctor's visit, Poincon sought no treatment after the 2015 allision and continued to work unabated. Even if she experienced some pain in the interim, OMC's alleged negligence in 2018 was an intervening and superseding cause that cut off any liability REC may have had for maintenance and cure arising from injuries Poincon supposedly sustained in the 2015 allision. Although Poincon may now be claiming she had persisting pain after the 2015 allision, there is no evidence that Poincon's medical treatment would have been necessary but for the 2018 slip and fall, and thus nothing to connect the *need* for the maintenance and cure in 2018 to REC's alleged negligence in the 2015 incident.

The Court has searched in vain for cases involving two separate and distinct accidents where an employer, having paid maintenance and cure to its employee arising from the second accident, seeks to recover contribution or indemnity for those payments from a third-party tortfeasor involved in the first accident. And the parties have not cited to any such cases. Courts have allowed employers to recover maintenance and cure payments from third-party tortfeasors where the employee's injuries caused in whole or part by the tortfeasor, during the employee's service with a prior employer, are later aggravated or recur in the normal course of an employee's work during his service with a current employer. *See, e.g.*, *Gooden v. Sinclair Ref. Co.*, 378 F.2d

9

576, 578 (3d Cir. 1967) (the seaman/employee's injuries were "heightened" on his current employer's "ship although he was not involved in any other accidents"); *Gore v. Clearwater Shipping Corp.*, 378 F.2d 584, 585 (3d Cir. 1967) (seaman did not sustain any accidents when in service of subsequent employers but pre-existing back condition worsened in their service); *Gauthier v. Crosby Marine Serv., Inc.*, 499 F. Supp. 295, 297-98, 300 (E.D. La. 1980) (plaintiff "could not trace the recurrence of symptoms to any isolated trauma"), *aff'd*, 752 F.2d 1085 (5th Cir. 1985); 1B BENEDICT ON ADMIRALTY § 47 (2020) ("Where a seaman is injured aboard one vessel and subsequently the injury becomes aggravated or reactivates on another vessel or vessels, all vessels involved are liable for maintenance and cure equally. However, if the injury was caused by the negligence or unseaworthiness of the first vessel, the later vessels may be entitled to reimbursement from the first vessel for their maintenance and cure payments."); 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6.35, at 603 (6th ed. 2018). But none of these cases involves two distinct accidents each having allegations of separate and independent fault, causation, and liability. Instead, in each of these cases, a single accident caused the employee's injuries and was the basis for assigning fault and figuring the employer's and third-party's respective shares of the maintenance and cure obligation. Consequently, these cases do not aid the Court in resolving the issue before it.

      As a practical matter, where an employee is injured in two separate and distinct accidents, it seems best to confine an employer's right to recover maintenance and cure from a third party for the first accident to only that portion of the maintenance and cure incurred prior to the second accident in which that employee is also injured. Any other rule is problematic. The difficulties posed by applying the *Adams*/*Savoie*/*Bertram* regime to the different factual circumstances presented by two separate accidents (including different parties, injuries, fault, causation, shares

of fault, etc.) are intractable and could be insurmountable – essentially requiring that the separate accidents be tried by a single factfinder even if filed years apart as separate lawsuits, to avoid the potential for conflicting findings and outcomes. And, in most instances, it would not be possible to do so. Thus, whether as a matter of law (by viewing a second accident, not involving the third-party tortfeasor from the first accident, as a superseding cause cutting off the third party's liability for maintenance and cure), or whether as a matter of public policy (by establishing a clear line of demarcation for the maintenance and cure attributable to separate accidents for purposes of the *Adams*/*Savoie*/*Bertram* analysis), the outcome is the same: where an employee is injured in two separate and distinct accidents, an employer's right to recover maintenance and cure from a third party tortfeasor involved in the first accident should be confined to that portion of the maintenance and cure incurred prior to the second accident in which that employee is also injured.

After all, under the general maritime law, "when the defendant's act aggravates or accelerates a pre-existing condition and renders a plaintiff unable to continue his work, or awakens a dormant condition that causes a plaintiff to experience pain when he did not suffer from pain or disability prior to the aggravation, the defendant can be liable in full for the disability caused." *Luwisch v. Am. Marine Corp.*, 2019 WL 1435932, at *11 (E.D. La. Mar. 31, 2019) (quoting *Stevens v. Omega Protein, Inc.*, 2005 WL 83248, at *7 (E.D. La. Jan. 13, 2005)). In other words, a negligent defendant takes the plaintiff as it finds her. The result should be no different in the maintenance and cure context when there are two distinct accidents that are substantially separated in time, and the second accident was allegedly caused in part by the employer's negligence. This is not a case where OMC is a non-negligent or passively negligent employer, so it is not inequitable for OMC to bear the entire cost of Poincon's maintenance and cure arising after the 2018 accident. Otherwise, an allegedly negligent shipowner/employer would have carte blanche to reach back in

time and space – no matter how distant or attenuated – to find some negligent tortfeasor on which to pin all or part of its maintenance and cure obligation.

The clearest way, then, to sort responsibility for an injured seaman's maintenance and cure as between a shipowner/employer and a third-party tortfeasor is on an accident-by-accident basis, analyzing each accident – and the maintenance and cure incurred or paid for same – as a discrete, distinct, and self-contained unit.[27] In other words, a first accident's maintenance and cure obligation ends where a second accident's begins.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that REC's motion for summary judgment (R. Doc. 32) is GRANTED, and OMC's third-party complaint against REC is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 9th day of October, 2020.

BARRY W. ASHE<br>
UNITED STATES DISTRICT JUDGE

---

[27] For example, consider this hypothetical: if a seaman sustains a back injury as a result of a collision caused by X and Y who are assigned 20% and 30% fault, respectively, while the seaman is assigned 50% fault and the seaman's employer none; and then, years later, the employee sustains back and neck injuries as a result of a second accident caused by Y and Z who are each assigned 20% fault, while the seaman and his employer are assigned 10% and 50% fault, respectively; and maintenance and cure is paid by the employer after each accident; how can the *Adams*/*Savoie*/*Bertram* analysis be conducted without segregating the maintenance and cure actually incurred and paid on the first accident from that actually incurred and paid on the second, especially where the injury is to the same body part or function? *Savoie* governs the first accident, so X and Y would bear a 40% and 60% share of the maintenance and cure, respectively; *Adams* governs the second accident, so Y and Z would each bear 20% of the maintenance and cure, with the balance absorbed by the employer; but the maintenance and cure incurred and paid would need to be segregated by accident to calculate the amounts owed by X (who owes for only the first accident), Y (who owes for both accidents), and Z and the employer (who each owe for only the second accident). Aggregating the maintenance and cure across both cases would not allow for a rational determination of the parties' respective shares of the maintenance and cure obligation. Thus, the maintenance and cure costs could only be sorted on an accident-by-accident basis by looking to those costs incurred/paid following each distinct accident.